```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

ENEIDA MANGUAL,                      :
                                     :
     Plaintiff,                      :
                                     :
v.                                   :  CASE NO. 3:14CV688(DFM)
                                     :
CAROLYN W. COLVIN,                   :
COMMISSIONER OF SOCIAL SECURITY,     :
                                     :
     Defendant.                      :
```

RULING ON PENDING MOTIONS

Plaintiff, Eneida Mangual, seeks judicial review of the denial of her application for supplemental security income ("SSI"). Currently pending are plaintiff's motion to reverse the decision of the Commissioner of Social Security ("Commissioner") (doc. #13) and defendant's motion to affirm the decision of the Commissioner. (Doc. #16.) On September 30, 2016, pursuant to the court's order, counsel filed a joint stipulation of facts and medical chronology, which I incorporate by reference. (Doc. #33.) For the following reasons, plaintiff's motion is GRANTED and defendant's motion is DENIED.[1]

I.   Legal Standard

The standards for determining an individual's entitlement to SSI, the Commissioner's five-step framework for evaluating

---

[1] This is not a recommended ruling; the parties consented to the jurisdiction of a magistrate judge. (Doc. #25); see 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b).

claims, and the district court's review of the final decision of the Commissioner are well-settled. I am following those standards, but do not repeat them here.

II. Background

Plaintiff applied for SSI on October 21, 2010. (R. 133-35.) Her application was denied initially and upon reconsideration. (R. 74, 80-82.) On November 8, 2011, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 84-92.) The Social Security Administration Office of Disability Adjudication and Review ("ODAR") scheduled a hearing for June 18, 2012. (R. 93-100.) Plaintiff appeared without representation and requested a continuance. ODAR senior attorney Sally Rogers conducted a pre-hearing conference to (1) advise plaintiff of her right to representation; (2) confirm that the medical evidence was up to date; and (3) schedule a hearing before an ALJ. (R. 34-39.) Plaintiff's hearing before an ALJ was scheduled for September 20, 2012.

Plaintiff went to the Greater Hartford Legal Aid ("GHLA") office on September 7, 2012. (R. 132.) Attorney Veronica Halpine reviewed plaintiff's file and told her that she would represent plaintiff "if she was able to get a continuance" of the September 20 hearing. (R. 132.) Attorney Halpine filed an "Appointment of Representative" form on September 17, 2012. (R. 131.) That same day, she requested a postponement of the

2

hearing in order to "complete the record and advocate on [plaintiff's] behalf." (R. 132.) The ALJ denied the request for postponement on September 18, 2012. (R. 228.) Attorney Halpine withdrew. (R. 228.)

Plaintiff appeared unrepresented at the September 20 hearing. (R. 40-55.) The ALJ issued an unfavorable decision dated October 15, 2012. (R. 30.) Plaintiff appealed the ALJ's decision to the Appeals Council, which denied her request for review on March 20, 2014. (R. 1-4.) She timely appealed to this court.

### III. Discussion

Plaintiff argues that the ALJ failed to fully develop the record. I agree.

"Where, as here, the claimant [was] unrepresented by counsel, the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts . . . . A reviewing court must determine whether the ALJ adequately protect[ed] the rights of [a] pro se litigant by ensuring that all of the relevant facts [are] sufficiently developed and considered." Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) (citations and internal quotation marks omitted).

Plaintiff's primary language is Spanish and her ability to communicate effectively in English is limited. (R. 184.) She

3

also has a limited education, having attended school only through 9th grade in Puerto Rico.  (R. 184.)  Plaintiff testified through an interpreter at both the pre-hearing conference and the hearing before the ALJ.  The record is replete with instances where plaintiff's tenuous command of English affected her ability to understand the proceedings.  At the pre-hearing conference, Attorney Rogers asked plaintiff about her medical records as follows:

> SR. ATTY: I'd like to go over your medical records.  You're treated at St. Francis Clinic.  Who do you see there?
> CLMT: Yes.
> SR. ATTY: Are you treated anywhere else?
> CLMT: No, only there.
> SR. ATTY: Have you had any hospitalizations or emergency room visits in the past year?
> CLMT: No, I went on the 15th.
> SR. ATTY: To St. Francis?
> CLMT: Yes.
> SR. ATTY: But you haven't been to the emergency room?
> CLMT: No, I went to the ER.
> SR. ATTY: Which hospital did you go to?
> CLMT: St. Francis.
> SR. ATTY: Before that, when were you seen there?
> CLMT: I don't remember.  Maybe four months.
> SR. ATTY: Have you been seen in any other hospitals?
> CLMT: No.
> SR. ATTY: Do you have any appointment cards with you?
> CLMT: Not with me.  I have home.
> SR. ATTY: You take prednisone, albuterol, isifomcyin[2]?
> CLMT: Yes.
> SR. ATTY: Anything else[?]

---

[2] "Isifomycin" appears to be a misspelling of the antibiotic azithromycin.  The medical record reflects that plaintiff's prescriptions include prednisone, albuterol, and azithromycin.  (R. 283.)  Prednisone and albuterol are used to treat asthma.  Physicians' Desk Reference (71st ed. 2017).

4

```
CLMT:       For    diabetes,    high    blood    pressure,
            cholesterol.
SR. ATTY:   Do you know the names of these medications?
CLMT:       No.
. . . .
CLMT:       I also use a machine for sleep.
```

(R. 37-39.)

At the hearing on September 20, the ALJ canvassed plaintiff about the medical evidence:

```
ALJ:        . . . .  Do you have any additional records
            with you today that you want me to see?
CLMT:       I don't understand.
ALJ:        Do you have any new medical records that you
            want me to look at?
CLMT:       Like pills and so forth?
ALJ:        Any treatment records that you have.
CLMT:       No, just the medicines I have.
. . . .
ALJ:        You also received a disc with your medical
            records on it.  Do you have any objection to
            any of the documents that are contained in
            that record?
CLMT:       I didn't understand.
ALJ:        You've got a disc there with your medical
            records.  Did you have a chance to look at
            those records?
CLMT:       No, I have not seen them.
ALJ:        I'll tell you what's in them.  We have records
            from St. Francis Hospital from April 2012 back
            through May 2011.  Other records go back to
            December 2011.  Records that cover a portion
            of 2010.  There is also a CE that you went to
            a doctor assigned by the Social Security
            Administration.  Do you have any reason to
            suspect that you would have an objection to
            any of those records?
CLMT:       I don't understand.
ALJ:        I'm asking if you're aware of information in
            your file that I should not consider.
CLMT:       No.
ALJ:        I'm going to admit all the exhibits for the
            hearing.
```

5

(R. 43, 45-46.) Plaintiff clearly had not reviewed the evidence before the hearing, nor did she understand the ALJ's questions aimed at developing the record.

Later in the hearing, plaintiff testified about her recent ailments, for which there are no treatment records in evidence. The following exchange highlights the ALJ's failure to develop the record:

```
CLMT:   If I go out anywhere, I have to go with my
        sister.
ALJ:    Why is that?
CLMT:   Because I get dizzy very easily and my vision
        gets blurry.
ALJ:    None of your medical records talk about that.
        Have you sought treatment for that?
CLMT:   For the sight?
ALJ:    Dizziness and your vision.
CLMT:   Yes, for the vision.  I've been going to the
        clinic.
ALJ:    When?
CLMT:   I went a month ago.  I have an appointment for
        November 22nd or something like that.
ALJ:    This wasn't affecting you until about a month
        ago?
CLMT:   No, it's been affecting me for a while.
ALJ:    You didn't get treatment for it before?
CLMT:   Yes, I'm getting eye drops.
ALJ:    When did you get those?
CLMT:   I don't remember.  I have them here.
ALJ:    You don't remember when you started taking the
        drops?
CLMT:   It's been a while.
ALJ:    A month?
CLMT:   About three months or less.
```

(R. 48-49.) Plaintiff's ophthalmology records were not included in the record, nor did the ALJ make any effort to add them. Plaintiff, now represented by counsel, contends that the ALJ

6

failed to include other records as well, including those from plaintiff's physical therapist and a diabetes clinic.  There is no updated prescription record.  Nor did the ALJ make any effort to contact plaintiff's treating sources for medical source statements.

A review of the record reveals that the ALJ failed to adequately fulfill his "affirmative obligation to assist this *pro se* claimant in developing [her] case . . . ."  <u>Cruz v. Sullivan</u>, 912 F.2d 8, 12 (2d Cir. 1990) (citation and internal quotation marks omitted).  Because of this failure, plaintiff did not have an adequate hearing.  "When the ALJ has failed to develop [the] record adequately, the district court must remand to the Commissioner for further development."  <u>Jackson v. Colvin</u>, No. 13-CV-5655 (AJN/SN), 2014 WL 4695080, at *15 (S.D.N.Y. Sept. 3, 2014).

IV.  <u>Conclusion</u>

For these reasons, plaintiff's motion to reverse the decision of the Commissioner (doc. #13) is GRANTED and defendant's motion to affirm the decision of the Commissioner (doc. #16) is DENIED.  The case is remanded for further development.  In light of the foregoing, I need not reach the merits of plaintiff's other arguments.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a

judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

    SO ORDERED at Hartford, Connecticut this 31st day of March, 2017.

                                  _____/s/_____
                                  Donna F. Martinez
                                  United States Magistrate Judge